**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

               **Plaintiff,**

               **v.**                        **06-CR-284S**

**LUIS PABON,**

               **Defendant.**
_____

## REPORT, RECOMMENDATION AND ORDER

       This case was referred to the undersigned by the Hon. William M. Skretny in accordance with 28 U.S.C. § 636(b)(1) for all pretrial matters and hear and report upon dispositive motions.

## PRELIMINARY STATEMENT

       The defendant Luis Pabon ("the defendant") is charged in a Superseding Indictment with having violated Title 21 U.S.C. § 846 (Count I).  (Docket #128).  There are nine other co-defendants similarly charged, some of whom are also charged with having violated Title 21 U.S.C. §§ 841(A)(1) and 841(b)(1)(B) and Title 18 U.S.C. § 2. (Docket # 128).

       The defendant has filed a motion to suppress evidence seized from premises located at 109 School Street which he claimed to be his residence and

evidence seized from garages located at 1073 Niagara Street and 365 Swan Street, Buffalo, New York pursuant to search warrants issued by this Court on January 4, 2006 and January 5, 2006.  (Docket #135, p. 23).  The defendant argues that the warrants in question are invalid since probable caused was lacking for their issuance and because they did "not comply with the particularity requirements of the Fourth Amendment because the items to be seized are intangible [*sic*] items which can be listed as the subject of a search on the face of the warrant and the particularity is not met."  (Docket #135, pp. 24-25).

The Government has filed a response in opposition to the defendant's motion.  (Docket #156).

## **FACTS**

### 1.    **The Search Warrant for 109 School Street, Buffalo, New York.**

On January 4, 2006, the Government presented a seventy-three (73) page affidavit of S.A. Yervelli for a search warrant authorizing the search of premises located at 109 School Street, Buffalo, New York, and seizure of various items related to drug trafficking set forth in an attached schedule.  The application and the affidavit upon which it is based also contains a very detailed description of the premises located at 109 School Street, Buffalo, New York.

In his affidavit sworn to January 4, 2006, S.A. Yervelli describes in great

detail the history of the drug investigation that he and his fellow agents were conducting since January 2005 involving the defendant and a number of other named individuals. More specifically, he describes the use of wire intercept orders that were issued by the Hon. William M. Skretny on October 25, November 23 and December 8, 2005 as well as the use of various confidential sources and the information that has been obtained through the use of these investigative tools.

Authorized wire interceptions established that the defendant's mother apparently resided at 109 School Street and that the defendant was using this location for purposes of his drug trafficking business.  The use of the premises at 109 School Street is also corroborated by confidential sources as set forth in the affidavit of S.A.Yervelli sworn to January 4, 2006.

This Court reviewed the affidavit of S.A. Yervelli sworn to January 4, 2006 and the application for a search warrant for the premises located at 109 School Street and concluded that probable cause for the issuance of the warrant had been established and that the application complied with the requirements of the Fourth Amendment and Rule 41 of the Fed.R.Crim.P.  As a result, a search warrant for the premises located at 109 School Street, Buffalo, New York was issued.  The face of the warrant contains a detailed description of the exterior of 109 School Street and incorporates by reference a "schedule of items to be seized," which schedule of items was physically attached to the search warrant.

2.      **The Search Warrant for 1073 Niagara Street, Buffalo, New York.**

On January 4, 2006, the Government presented a seventy-three (73) page affidavit of S.A. Yervelli for a search warrant authorizing the search of premises located at 1073 Niagara Street, Buffalo, New York, and seizure of various items related to drug trafficking set forth in an attached schedule.  The application and the affidavit upon which it is based also contains a very detailed description of the premises located at 1073 Niagara Street, Buffalo, New York.

In his affidavit sworn to January 4, 2006, S.A. Yervelli describes in great detail the history of the drug investigation that he and his fellow agents were conducting since January 2005 involving the defendant and a number of other named individuals. More specifically, he describes the use of wire intercept orders that were issued by the Hon. William M. Skretny on October 25, November 23 and December 8, 2005 as well as the use of various confidential sources and the information that has been obtained through the use of these investigative tools.

Investigative detail is provided in the affidavit of S.A. Yervelli sworn to January 4, 2006 as to the use of the auto garage located at 1073 Niagara Street which confidential sources advised "was controlled by [the defendant and Enrique Sexto] and that they were involved in the large scale distribution and sale of heroin and powder

cocaine."

This Court reviewed the affidavit of S.A. Yervelli sworn to January 4, 2006 and the application for a search warrant for the premises located at 1073 Niagara Street and concluded that probable cause for the issuance of the warrant had been established and that the application complied with the requirements of the Fourth Amendment and Rule 41 of the Fed.R.Crim.P.  As a result, a search warrant for the premises located at 1073 Niagara Street, Buffalo, New York was issued.  The face of the warrant contains a detailed description of the exterior of 1073 Niagara Street and incorporates by reference a "schedule of items to be seized," which schedule of items was physically attached to the search warrant.

**3.      The Search Warrant for 365 Swan Street, Buffalo, New York.**

On January 5, 2006, the Government presented a fifteen (15) page affidavit of S.A. Yervelli sworn to on January 5, 2006 in support of an application for a search warrant for "Two (2) storage bays located within the business of J&B's Truck Repair Service of Western New York, Inc. located at 365 Swan Street, Buffalo, New York."  This affidavit also incorporated by reference "the application and affidavit for a search warrant for 452 Fargo Avenue, rear cottage, under Case No. 06-M-6" which this Court had also reviewed.  This incorporated affidavit and S.A. Yervelli's affidavit of January 5, 2006 contain a detailed history of the drug investigation conducted by the

agents as it related to the defendant and other individuals.

The January 5, 2006 Yervelli affidavit also describes items contained in the storage bays located at J&B's Truck Repair Service of Western New York at 365 Swan Street, Buffalo, New York, which were observed by him as a result of a consent search authorized by the owner/landlord of the premises.  The items observed, and the subject of the January 5, 2006 search warrant application consisted of "customized" automobiles, "a boat and a Sea-Doo on a trailer" which S.A.Yervelli "recognize[d] as motor vehicles suspected to be purchased by Sexto, Pabon, Lao and others within their drug organization with the proceeds illegally derived from their distribution."  S.A. Yervelli further opined that based on his training and experience, "vehicles such as these represent substantial investments to the owners and are considered to be status symbols by many individuals who engage in illegal narcotics trafficking."  S.A. Yervelli also iterates that a review of tax records authorized by the Court established that "all of the targets of the investigation [did] not have the legitimate income to support their lifestyles and purchases of numerous assets as detailed in this affidavit and the affidavit of January 4, 2006."  As a result, S.A Yervelli concludes that these assets "represent evidence of such illegal conduct" which "are subject to forfeiture and should be seized." The affidavit of S.A. Yervelli then describes in detail and particularity, the items to be seized.

This Court reviewed the affidavit of S.A. Yervelli sworn to January 5, 2006

and the application for a search warrant for the premises located at 365 Swan Street

and concluded that probable cause for the issuance of the warrant had been

established and that the application complied with the requirements of the Fourth

Amendment and Rule 41 of the Fed.R.Crim.P.  As a result, a search warrant for the

premises located at 365 Swan Street, Buffalo, New York was issued.  The face of the

warrant contains a detailed description of the exterior of 365 Swan Street and

incorporates by reference a "schedule of items to be seized," which schedule of items

was physically attached to the search warrant.

## DISCUSSION AND ANALYSIS

I find the claims of the defendant with respect to each of the warrants at

issue herein, to be without merit.

In determining whether probable cause exists for the issuance of a

warrant, the United States Supreme Court has stated:

> The totality of the circumstances approach is far more
> consistent with our prior treatment of probable cause than is
> any rigid demand that specific "tests" be satisfied by every
> informant's tip.  Perhaps the central teaching of our
> decisions bearing on the probable-cause standard is that it is
> a "practical, nontechnical conception."  (citation omitted).  "In
> dealing with probable cause, . . . as the very name implies,
> we deal with probabilities.  These are not technical; they are
> the factual and practical considerations of everyday life on
> which reasonable and prudent men, not legal technicians,
> act."  (citation omitted.)

7

In *Aguilar,* we required only that "the magistrate must be informed of *some of the underlying circumstances* from which the informant concluded that . . . narcotics were where he claimed they were, and *some of the underlying circumstances* from which the officer concluded that the informant . . . was "credible" or his information "reliable." (citation omitted).

As our language indicates, we intended neither a rigid compartmentalization of the inquiries into an informant's "veracity," "reliability," and "basis of knowledge," nor that these inquiries be elaborate exegeses of an informant's tip. Rather, we required only that *some* facts bearing on two particular issues be provided to the magistrate.

\*   \*   \*

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis . . . for [conclud[ing] "that probable cause existed.  (citation omitted). We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli*.

*Illinois v. Gates*, 462 U.S. 213, 231, 238-239 (1983).

As the Court of Appeals for the Second Circuit stated:

A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden.   "Where [the] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. . . .  [T]he resolution of doubtful

or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).  In particular, where the officer requesting the search warrant relies on an informant, the magistrate's role is to examine the totality of the circumstances and to

> make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *see United States v. Feliz-Cordero*, 859 F.2d 250, 252-53 (2d Cir. 1988).

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).

Each of the affidavits submitted by S.A. Yervelli provided sufficient probable cause to this Court for the issuance of the search warrants for the premises at 109 School Street, 1703 Niagara Street and 365 Swan Street, Buffalo, New York. Training and experience of an agent can be considered in determining whether probable cause exists.  *United States v. Fama,* 758 F.2d 834, 838 (2d Cir. 1985), *cert. denied*, 486 U.S. 1043 (1987).  Further, each affidavit and application in support of each warrant more than sufficiently provided the particulars in describing the property to be searched and the items to be seized.

In upholding broadly worded categories of items available for seizure, we have noted that the language of a warrant is to be construed in light of an illustrative list of seizable items. *See United States v. Young*, 745 F.2d 733, 759-60 (2d Cir. 1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *see also Andresen v. Maryland*, 427 U.S. at 480-81, 96 S.Ct. at 2748-49.  In the pending case, the warrant supplied sufficient examples of the type of records that could be seized – bank records, business records, and safety deposit box records.  No doubt the description, even with illustrations, did not eliminate all discretion of the officers executing the warrant, as might have occurred, for example, if the warrant authorized seizure of the records of defendant's account at a named bank.  But the particularity requirement is not so exacting.  Once a category of seizable papers has been adequately described, with the description delineated in part by an illustrative list of seizable items, the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within the described category.

It is true that a warrant authorizing seizure of records of criminal activity permits officers to examine many papers in a suspect's possession to determine if they are within the described category.  But allowing some latitude in this regard simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked "drug records."

*United States v. Riley*, 906 F.2d 841,845-846 (2d Cir. 1990); *see also Andresen v. Maryland*, 427 U.S. 463, 482 (1976).

Lastly, the defendant has failed to present anything that would nullify the application of the "good faith" doctrine established under *United States v. Leon*, 468 U.S. 897, 920 (1984).  As the United States Supreme Court stated:

> [S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.
>
> \*   \*   \*
>
> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.  In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.  "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law."  (citation omitted).  Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Leon*, 468 U.S. at 918, 921.


Therefore, it is hereby RECOMMENDED that defendant's motion to suppress the evidence seized pursuant to the search warrants issued January 4, and 5, 2006 for the premises located at 109 School Street, 1073 Niagara Street, and 365 Swan Street, Buffalo, New York, respectively, be DENIED.


## CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that defendants' motion (Docket #135), to suppress be **DENIED**.


Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

_____This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Crim. P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider de novo, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).  **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  Thomas v. Arn, 474 U.S. 140 (1985); Wesolek, et al. v. Canadair Ltd., et al., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2**

12

(concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

/s/ *H. Kenneth Schroeder, Jr.*
_____
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

**DATED:**     **Buffalo, New York**
**May 19, 2008**